*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ADAM CHRISTOPHER ROBE,

        Defendant-Appellant.

UNPUBLISHED
April 21, 2022

No. 358655
Jackson Circuit Court
LC No. 19-002895-FH

Before: BOONSTRA, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Defendant was involved in a car accident hours after he had been drinking. Defendant was not at fault for the accident, but a preliminary-breath test showed that his blood-alcohol content was above the legal limit. That test was referenced in an affidavit supporting a search-warrant application that led to a blood draw that confirmed defendant's blood-alcohol content was above the legal limit. Defendant moved to suppress the blood draw on the basis that the preliminary-breath test was improper; the trial court denied his motion. This Court reversed the trial court's order in *People v Robe*, ___ Mich App ___; ___ NW2d ___ (2021) (Docket No. 355005). On remand, the trial court concluded that the warrant was supported by probable cause independent of the results of the preliminary-breath test. Now on appeal again, we reverse the trial court's finding that the search warrant was supported by probable cause, vacate its order denying defendant's motion to suppress, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This Court previously summarized the facts of this case in *Robe*, ___ Mich App at ___; slip op at 1:

> Defendant was involved in a two-car accident after the driver of the other vehicle ran a red light. The record reveals that the other driver was at fault. When the officers arrived on the scene they focused on assisting the driver of the other vehicle who had sustained serious injuries. Afterwards, an officer spoke with defendant for about three minutes before asking him to take a [preliminary-breath test]. Defendant consented to the test, which indicated a 0.114 blood alcohol content

-1-

(BAC). Field sobriety tests were not performed, and on the basis of the [preliminary-breath-test] results the officer arrested defendant and obtained a search warrant for a blood draw.

Officer Norris of the Blackman Leoni Public Safety Department administered the preliminary-breath test. Before administering the test, Officer Norris asked defendant if he drank any alcohol that day. Defendant said no and then took the test. Shortly after taking the test—but before learning the test results—defendant admitted that he drank a beer at lunch. Officer Norris then told defendant the test results and defendant admitted that he drank more than one beer that day, but claimed he was "not sure" how much he drank. Officer Norris then arrested defendant and took him to the hospital. While at the hospital, Officer Norris submitted the affidavit supporting the search warrant, which averred, in relevant part:

> [T]he affiant has personally observed [defendant] and/or believes said person to be under the influence of alcohol, or a controlled substance, or both, or has an unlawful blood alcohol level, based on the following observation: [defendant] was involved in a crash in which he T-boned a vehicle he stated failed to yield at the traffic signal. [Defendant] admitted he had been drinking and consented to a [preliminary-breath test] which yielded a .114 [blood-alcohol content]. [Defendant] then admitted he had be [sic] drinking at Klavens hours before the crash. No [standard-field-sobriety tests] were performed due to [defendant] claiming knee pain and a possible head injury.

A police report filed by a different officer stated that an eyewitness claimed defendant had the right of way when the accident occurred. The second officer also reviewed data from the crash and concluded that the vehicle defendant hit never stopped and, therefore, defendant was not at fault for the crash. Julie Stewart, an employee at Henry Ford Allegiance Hospital, executed the search warrant and drew two vials of blood from defendant. The blood draw revealed a 0.134 blood-alcohol content. Officer Norris's body camera showed that he was the only law-enforcement official present during the blood draw.

> Defendant was then bound over to the circuit court, where he
>
> filed a motion to suppress the [preliminary-breath-test] results on the ground that the [preliminary-breath test] was not administered in accordance with the administrative rules. Specifically, defendant contended that the officer administering the [preliminary-breath test] failed to observe him for 15 minutes before administering the [preliminary-breath test]. Defendant explained that if the [preliminary-breath-test] results were suppressed, he would then bring a motion challenging whether there was probable case for his arrest. The prosecutor did not file a written response but argued at the hearing that the motion should be denied because the [preliminary-breath-test] results would not be admitted at trial. Defendant voluntarily submitted to the [preliminary-breath test], and the 15-minute observation period did not have to be 15 uninterrupted minutes. The trial court took the matter under advisement and later issued an oral ruling from the bench denying defendant's motion. The court assumed that the administrative rule had been violated, but determined that under the facts of this case the violation did not

warrant suppressing the [preliminary-breath-test] results. [*Id*. at ___; slip op at 1-2.]

This Court reversed the trial court's order, explaining that defendant was observed for only three minutes—instead of the required 15—before the preliminary-breath test, which violated the administrative rule and "call[ed] into question the accuracy of the [preliminary-breath test]." *Id*. at ___; slip op at 4. This Court instructed the trial court to permit defendant to file a motion "to determine whether there was probable cause to arrest [defendant] for operating a motor vehicle while intoxicated" without the preliminary-breath-test results. *Id*.

On remand, defendant moved to suppress his blood-test results and dismiss the charge against him. Defendant argued that the affidavit supporting the search warrant was misleading because it led the magistrate to believe that defendant might have been responsible for the accident. Defendant argued that, without the preliminary-breath-test results, there was insufficient evidence to support the search warrant. The prosecutor argued that the affidavit established probable cause, and the trial court could consider the preliminary-breath test, albeit with diminished reliability given the errors that occurred when the test was administered. The trial court held a hearing on the matter and stated, when making its factual findings, that there was "an accident, regardless of, of whose fault it was," and that it did not "think it's uncommon for a defendant to maximize the amount of time between drinking and driving." The trial court then concluded that probable cause supported the search warrant and denied defendant's motion. Defendant moved for reconsideration, and the trial court denied that motion as well. This appeal followed, on leave granted. *People v Robe*, unpublished order of the Court of Appeals, entered December 2, 2021 (Docket No. 358655).

## II. ANALYSIS

This Court reviews for clear error a trial court's findings regarding a motion to suppress evidence. *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611 (2012). "A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that the trial court made a mistake." *Id*. But this Court reviews de novo the trial court's ultimate ruling on the motion to suppress because "the application of constitutional standards regarding searches and seizures to essentially uncontested facts is entitled to less deference." *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005).

## A. PROBABLE CAUSE

"The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000) (citation omitted). A search complies with the Fourth Amendment when police execute a valid search warrant—supported by probable cause—or an exception to the Fourth Amendment applies. *Id*. at 418. "Probable cause to issue a search warrant exists where there is a substantial basis for inferring a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 417-418 (quotation marks and citation omitted). "A search warrant may be issued only on a showing of probable cause that is supported by oath or affirmation." *People v Nunez*, 242 Mich App 610, 612; 619 NW2d 550 (2000). When the search warrant is supported by an affidavit, "the

affidavit must contain facts within the knowledge of the affiant and not mere conclusions or beliefs." *People v Martin*, 271 Mich App 280, 298; 721 NW2d 815 (2006). "The affiant may not draw his or her own inferences, but rather must state matters that justify the drawing of them." *Id*. This Court "must evaluate the search warrant and underlying affidavit in a commonsense and realistic manner" and "determine whether a reasonably cautious person could have concluded, under the totality of the circumstances, that there was a substantial basis for the magistrate's finding of probable cause." *People v Echavarria*, 233 Mich App 356, 366-367; 592 NW2d 737 (1999).

As defendant argues, the prosecutor repeatedly referred to the suppressed preliminary-breath-test results in the trial court. But the trial court explicitly stated that it was not considering the preliminary-breath-test results. Accordingly, the trial court properly considered the affidavit as directed by this Court in *Robe*, ___ Mich App at ___; slip op at 4. After removing the reference to the preliminary-breath test and the resulting admission that arose after the test, the affidavit supporting the search warrant states, in relevant part, the following observations:

> [Defendant] was involved in a crash in which he T-boned a vehicle he stated failed to yield at the traffic signal. . . . No [standard-field-sobriety tests] were performed due to [defendant] claiming knee pain and a possible head injury.

These facts do not suggest that defendant was intoxicated or that he even appeared intoxicated to the officer. In fact, no references to alcohol remain because defendant only admitted to drinking any alcohol after Officer Norris administered the improper preliminary-breath test. Rather, when properly considered, the affidavit merely states that defendant was in a crash that he claimed was not his fault and he did not take any standard-field-sobriety tests. None of those facts suggest that defendant was intoxicated.

When making its findings at the conclusion of the hearing, the trial court stated that there was "an accident, regardless of, of whose fault it was," and did not "think it's uncommon for a defendant to maximize the amount of time between drinking and driving." But the trial court ignored the fact that the affidavit did not include any specific facts suggesting that defendant was intoxicated or that the accident was related to defendant's drinks from hours earlier. Indeed, the affidavit included no information suggesting that defendant's earlier drinking affected his driving other than the fact that he drank an unspecified amount of alcohol earlier that day. Without the preliminary-breath-test results, the affidavit lacked "a substantial basis for inferring a fair probability that contraband or evidence of a crime will be found in a particular place," *Kazmierczak*, 461 Mich at 417-418 (quotation marks and citation omitted), because nothing in the affidavit suggested defendant was intoxicated or that his drinks from earlier in the day had anything to do with the accident. Thus, the trial court erred by finding that there was probable cause to support the search warrant.

## B. GOOD FAITH

"Ordinarily, if a warrant is determined to be invalid because it lacked a probable-cause basis or was technically deficient in some other manner, any evidence seized pursuant to that

warrant, or seized subsequently as a result of the initial illegal search, is inadmissible as substantive evidence in related criminal proceedings." *People v Hellstrom*, 264 Mich App 187, 193; 690 NW2d 293 (2004). Under the good-faith exception, however, "a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Id*. at 196 (cleaned up). That said, "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Id*. at 197. Relevant to this case,

> Reliance on a warrant is reasonable even if the warrant is later invalidated for lack of probable cause, except under three circumstances: (1) if the issuing magistrate or judge is misled by information in the affidavit that the affiant either knew was false or would have known was false except for his or her reckless disregard of the truth; (2) if the issuing judge or magistrate wholly abandons his or her judicial role; or (3) if an officer relies on a warrant based on a "bare bones" affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. [*People v Czuprynski*, 325 Mich App 449, 472; 926 NW2d 282 (2018).]

If one of the requirements is met, then any reliance on the search warrant was objectively unreasonable and the exclusionary rule mandates exclusion of any evidence obtained through the search warrant. *Goldston*, 470 Mich at 531, 538. If none of the requirements are met, however, then the good-faith exception permits admission of the evidence despite the unlawful search. *Id*. at 542.

The affidavit states that, according to defendant, the other car failed to yield to defendant. It also states that the preliminary-breath test showed that defendant's blood-alcohol content was 0.114 and no standard-field-sobriety tests were performed. Those statements, on their face, are true, but they do not reveal all of the pertinent facts. For example, the affidavit makes no mention of the eyewitness who told at least one other officer that defendant was not at fault for the accident. It also does not address the deficiencies in the preliminary-breath test that caused this Court to omit the results from the probable-cause analysis.

The trial court never reached the necessary good-faith analysis to uphold the search warrant in this case. Accordingly, we are left with unanswered questions that are crucial to determining whether Officer Norris acted in good faith here. Pertinent matters might include why Officer Norris did not wait the necessary 15 minutes to conduct a proper preliminary-breath test and whether, at the time he completed his affidavit, he knew about the witness who stated that defendant was not at fault for the crash. These and other pertinent matters are best left to the trial court in the first instance.

## III. CONCLUSION

We reverse the trial court's finding that the search warrant was supported by probable cause, vacate its order denying defendant's motion to suppress, and remand for further proceedings to determine whether the evidence was nevertheless admissible under the good-faith exception. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Brock A. Swartzle